O

# United States District Court
# Central District of California

| | |
|---|---|
| MARK THOMAS GRANDE,<br><br>    Plaintiff,<br><br>  v.<br><br>LEE BACA et al.,<br><br>    Defendants. | Case № 2:13-cv-08348-ODW(AGRx)<br><br>**ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER [49]** |

  Plaintiff Mark Thomas Grande filed this Application for Temporary Restraining Order seeking to prevent the California Department of Corrections and Rehabilitation ("CDCR") from transferring him to another prison facility in violation of the California Code of Regulations. He contends that he falls within the Regulations' involuntary-transfer prohibition for individuals suffering from a serious mental illness who are members of CDCR's Mental Health Services Delivery System. Defendants have received full notice of this Order and an opportunity to respond but were unable to provide further information to the Court. Finding that Grande meets the standards for issuance of a temporary restraining order, the Court **GRANTS** Grande's Application. (ECF No. 49.)

  A court may issue a temporary restraining order upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose

of such an order is solely to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974).

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir.2001). A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits; (2) a likelihood that plaintiff will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

The Ninth Circuit employs a "sliding scale" approach to *Winter*'s four-element test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under this approach, a preliminary injunction may issue if the plaintiff raises "serious questions going to the merits" and demonstrates that "the balance of hardship tips sharply towards the plaintiff's favor," but only so long as the plaintiff also demonstrates that irreparable harm is likely—not just possible—and that the injunction is in the public interest. *Id.* (internal quotation marks omitted).

Finally, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Thus, a district court should enter preliminary injunctive relief only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

Grande requests that the Court issue a temporary restraining order preventing CDCR from transferring him out of Valley State Prison until the resolution of his civil action. He asserts that prison officials wish to transfer him to another facility despite his objections and that they have targeted him due to his pending litigation. Grande

///

contends that any involuntary transfer would violate CDCR regulations—specifically, California Code of Regulations title XV, section 3379(G)(2). That section provides,

> An inmate is not eligible for an involuntary transfer if . . . [t]he inmate has a serious mental disorder as defined by the class certification order (executed October 23, 1991) and Revised Program Guide (2009 Revision, Chapter 1, Section D.1., page 12-1-6) of *Coleman v. Schwarzenegger* and who is a present member of the Mental Health Services Delivery System at any level of care.

Cal. Code. Regs. tit. XV, § 3379(G)(2). Grande asserts that he has been diagnosed with bipolar disorder II and is a member of the Mental Health Services Delivery System. He therefore argues that he is not eligible for an involuntary transfer.

After receiving Grande's Application, the Court ordered Defendants to respond to it. On September 15, 2014, Defendants responded by stating that they were,

> unable to provide further information to assist the Court in responding to plaintiff's request for a temporary restraining order. The CDCR has not yet responded to defendants' subpoena requesting a copy of plaintiff's central file and medical records. As such, counsel for the defendants does not know whether plaintiff is in fact a patient or member in the CDCR's Mental Health Services Delivery System, whether he is indeed being considered for a transfer to another correctional institution or the factors regarding transfer considered by plaintiff's correctional counselor, the relevant classification committee, and the classification staff representative assigned to the plaintiff or his file. The portion of Title 15 that plaintiff attached to his request appears to relate to transfers of inmates to out-of-state correctional facilities. Counsel for the defendants does not know whether a transfer of plaintiff to an out-of-state correctional facility is being contemplated.

///

(ECF No. 51.) Since Defendants are not able to provide the Court with further information, the Court must consider Grande's Application based solely on his allegations.

Grande has established that he falls within the Regulations' involuntary-transfer prohibition. He states that he has been diagnosed with bipolar disorder II, which constitutes a "serious mental disorder" per the Revised Program Guide 2009. (*See* ECF No. 49.) He also asserts that he is a current member of the Mental Health Services Delivery System. He therefore meets both prongs of section 3379(g)(2)'s involuntary-transfer proscription.

Grande has further established that the anticipated retaliatory transfer would violate his First Amendment rights. The Ninth Circuit has "held that prison officials could not transfer an inmate to another prison in retaliation for the inmate's exercise of his First Amendment right to pursue federal civil rights litigation." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (citing *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985)). In the qualified-immunity context, the court has even determined "that the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit." *Pratt*, 65 F.3d at 806.

The Ninth Circuit has recognized that since a prisoner's First Amendment rights are already curtailed by incarceration, the litigant must further allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Rizzo*, 778 F.2d at 532. While Grande does not specifically discuss this holding from *Rizzo*, the Court finds comfort in the fact that Grande fits well within section 3379(G)(2)'s transfer prohibition and that Grande discussed his transfer concerns with the supervising case worker to no avail.

Since Grande has a constitutional right to not be transferred to another facility in retaliation for exercising his First Amendment rights, the Court finds that he would consequently suffer irreparable harm from such a transfer. While someone unfamiliar

with the prison system might not see a transfer as interfering with an individual's ability to pursue his legal action, the fact that retaliatory transfers do occur suggests that the transfer has the intended negative effect. Stated another way, if transfers did nothing to impinge one's rights to pursue his lawsuit, then there would not be a full line of Ninth Circuit cases on point recognizing the transfers' unconstitutional nature.

The Court also finds that the balance of equities tips in Grande's favor. The Court has given Defendants an opportunity to respond to the Application, and they have not provided any reason why a transfer would interfere with legitimate prison administration. A restraining order in this action would simply maintain the status quo; it would not require prison officials to affirmatively do anything. But if the Court were to deny preliminary relief and allow Grande's transfer, Grande would potentially suffer a First Amendment violation. That is obviously a result the Court endeavors to avoid.

Lastly, the public interest strongly supports protection of Grande's First Amendment rights. While many individuals might not have much sympathy for an incarcerated individual, the First Amendment does not stop at the jailhouse gate. The Constitution does not simply protect the wealthy and sophisticated among society; rather, it protects everyone regardless of their status.

The Court thus finds that Grande has established that he is entitled to a temporary restraining order. The Court consequently **ORDERS** as follows:

1. Defendants and Defendants' agents, employees, and all other persons acting on behalf of, or in concert or participation with Defendants are hereby restrained from transferring Grande to any other prison facility without further order of the Court;

2. This Order shall be deemed effective when filed electronically on the docket by the Clerk of Court;

3. Defendants may seek to challenge Grande's allegations via a motion to dissolve the temporary restraining order. But this Order shall continue until the Court

/ / /

issues an order on any future dissolution motion or until dissolved *sua sponte* by the Court;

    4.    Counsel for Defendants shall immediately serve a copy of this Order on their clients; and

    5.    The Clerk of Court shall promptly mail a copy of this Order to Grande.

**IT IS SO ORDERED.**

September 16, 2014

_____
          **OTIS D. WRIGHT, II**
    **UNITED STATES DISTRICT JUDGE**